UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL ACTION NO. 14-246 |
| | * | |
| | * | SECTION: "N"(1) |
| VERSUS | * | |
| | * | JUDGE KURT D. ENGELHARDT |
| | * | |
| LIONEL THOMAS | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

REPORT AND RECOMMENDATION

As ordered by the District Court, on August 24, 2017, the undersigned conducted an evidentiary hearing in the captioned matter for the purposes of determining "whether Lionel Thomas requested that counsel, Dwight Doskey, file a notice to appeal." For the following reasons, IT IS RECOMMENDED that the Court find that Thomas has demonstrated by a preponderance of the evidence that he requested Doskey file an appeal and order Thomas be allowed to file an out of time appeal within fourteen days of the Court's adoption of this Report and Recommendation.

Background

Defendant Lionel Thomas was charged in a one count indictment with conspiracy to distribute one kilogram or more of heroin. (Rec. Doc. 1). On February 3, 2016, he pleaded guilty to Count 1 of the indictment and also pleaded guilty to a one count bill of information to establish a prior felony conviction for possession of heroin. (Rec. Doc. 61). On April 13, 2016, Judge Engelhardt sentenced him to 264 months of imprisonment. (Rec. Doc. 69). This was 2 months over the bottom end of the range yielded by the Sentencing Guidelines. (Rec. Doc. 76, at 14). Neither Thomas nor his counsel timely filed a notice of appeal.

1

On December 12, 2017, Thomas filed a Motion to Vacate Sentence under 28 U.S.C. § 2255. Among other things, he argues that he suffered ineffective assistance of counsel because his counsel failed to file a notice of appeal although he told counsel to do so. The government opposed arguing that the grounds for relief asserted by Thomas "are substantively meritless and his appellate and habeas rights were waived as part of his plea agreement." Nonetheless, the government recognized that under United States v. Tapp, the failure to file a notice of appeal after being requested to do so is *per se* ineffective assistance of counsel. 491 F.3d 263, 266 (5th Cir. 2007) United States v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007) ("[E]ven where a defendant has waived his right to direct appeal and collateral review . . . if the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to file an out-of-time appeal, regardless of whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver.").

The government further submitted that to resolve the question of whether Thomas requested his counsel to file a notice of appeal as he claims in his motion, the Court must hold an evidentiary hearing. See United States v. Higgins, 459 F. App'x 412, 413 (5th Cir. 2012) ("If the evidence does not 'conclusively show' whether the petitioner requested that counsel file an appeal, then the district court should hold an evidentiary hearing on the issue."). On May 15, 2017, Judge Engelhardt referred the matter to the magistrate judge for purposes of conducting an evidentiary hearing and preparing proposed findings of fact and conclusions of law regarding "whether Lionel Thomas requested that counsel, Dwight Doskey, file a notice to appeal." (Rec. Doc. 84). The undersigned conducted an evidentiary hearing on August 24, 2017.

Findings of Fact and Conclusions of Law

1. *Ineffective Assistance of Counsel where Notice of Appeal is Not Filed*

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Counsel's failure to file a notice of appeal when the client requests counsel do so is *per se* ineffective assistance of counsel, regardless of whether the appeal would have merit. Tapp, 491 F. 3d at 265. In Tapp, the Fifth Circuit held that this rule applies even where, as here, the defendant has waived his right to direct appeal and collateral review. Id. at 266. Thus, in a case like the present one, if the defendant can "demonstrate by a preponderance of the evidence that he requested an appeal . . . [he] will be entitled to file an out-of-time appeal." Id. Where the defendant has not "clearly conveyed his wishes [regarding the filing of an appeal] one way or the other," the Supreme Court instructs that the court must determine whether counsel performed deficiently by failing to consult with the client regarding an appeal and, if so, whether counsel's failure to do so prejudiced the defendant. Flores-Ortega, 528 U.S. at 477-81. Counsel's failure to consult regarding an appeal is constitutionally defective if "there is reason to think either (1) that a rational defendant would want to appeal, or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. And the defendant shows prejudice by demonstrating that, but for counsel's deficient performance, he would have appealed." Id. at 484.

As noted above, where there is a dispute regarding whether the defendant requested counsel file an appeal, the court must hold an evidentiary hearing to determine whether he made the request. For example, a court in this district recently held that defendant failed to establish that he had requested counsel file an appeal where he testified at the evidentiary hearing that he had made

3

the request, but counsel testified that the defendant had not done so. United States v. Hamilton, No. CR 11-235, 2017 WL 1317538, at *9 (E.D. La. Mar. 24, 2017) (Brown, J.). In addition to this conflicting testimony, the defendant in Hamilton had, on the same day as sentencing, signed a form stating "I do not wish to file any appeal of my sentence and/or conviction." Id. The court concluded that the defendant did not ask counsel to file an appeal. Id.

In contrast, in Carpenter v. United States, the defendant's counsel agreed with the defendant's evidentiary hearing testimony that he had requested counsel file an appeal, but counsel recalled having a long discussion with the defendant about why an appeal was not his best course of action and counsel recalled ending the conversation feeling confident that the defendant no longer wished to pursue the appeal. No. MO-10-CR-00231-RJ-DC, 2013 WL 12192449, at *5-6 (W.D. Tex. Nov. 22, 2013), report and recommendation adopted, No. MO:10-CR-00231-RAJ, 2013 WL 12192465 (W.D. Tex. Dec. 11, 2013). Counsel testified that he spoke with the defendant several times afterwards and the defendant never brought up an appeal again. Id. The magistrate judge concluded that the defendant had demonstrated that he asked his counsel to file an appeal but counsel did not do so. Id. at *7. The court found that "Counsel's advice [not to pursue the appeal] was competent and most likely the correct avenue to pursue . . . ." Id. Nonetheless, the court found it was "impossible to determine whether [the defendant] no longer wanted to pursue an appeal after Counsel's competent advice." Id. Finding that "Counsel's belief is not enough under this set of facts," the Court found that counsel's performance was deficient when he failed to file a notice of appeal after being expressly requested to do so. Id. at *8.

In another case where counsel simply could not recall whether defendant had requested that counsel file an appeal, the district judge did not even hold an evidentiary hearing, siding instead with the defendant and allowing an out-of-time appeal. No. CIV.A. 6:07CV100, 2008 WL

4

2008631, at *2 (E.D. Tex. May 8, 2008). In Thompson, the court determined that the government had offered no evidence to contradict defendant's statement under penalty of perjury "that he told his attorney that he wanted to appeal the sentence," where the only response by the attorney "was that he did not recall [defendant] requesting him to appeal on his behalf." Id. Finding nothing to be gained by an evidentiary hearing, the court granted the motion to vacate to the extent that defendant could file an out-of-time appeal. Id.

  2. *Whether Thomas Requested that Doskey File an Appeal*

Thomas retained Doskey to serve as his counsel. Thomas pleaded guilty, and his guilty plea included a waiver of appeal rights. Doskey testified that he and Thomas discussed the appellate waiver before Thomas signed the plea agreement containing it. Realtime Un-edited Evid. Hearing Tr. at 26. When asked about the waiver of appeal rights in his plea agreement, Thomas testified that "when me and my lawyer went over there to talk about that, he was still letting me know, like, I was going—we were going to go on appeal." Id. at 12. Doskey testified that he told Thomas that "this case wasn't going anywhere with an appeal, that everything we were asking the judge to decide on [in the objections to the Presentence Investigation Report ("PSR")] was clearly within the judicial discretion, that the case law wouldn't support an appeal." Id. at 32. The timing of this conversation is not clear from the testimony. On cross-examination, Doskey explained that he made a specific decision not to appeal in Thomas's case because he "felt that everything was within the judge's discretion and that he had not abused that discretion." Id. at 40. Doskey did not testify that Thomas came to this decision himself or that Thomas agreed with counsel's advice after the sentence was issued. Read together, the Court concludes that Doskey explained to Thomas

that his case would not support an appeal unless the judge abused his discretion in sentencing. Doskey ultimately concluded that Judge Engelhardt did not abuse his discretion.[1]

However, the Court finds that *Thomas* felt very strongly that Judge Engelhardt *had* abused his discretion in overruling his objections to the PSR. Thomas testified that he discussed the PSR and the objections to it with Doskey prior to filing. One objection involved a challenge to two individuals listed in the PSR as being his subordinates for purposes of assigning "Leadership" points in the sentencing guideline calculation. At sentencing, the PSR was revised to include four individuals instead of just two. The District Court overruled the objections. Thomas testified that he continued to vehemently disagree with the drug quantity and the assignment of leadership points, especially the addition of two leadership points over the two in the original PSR. He testified that he discussed his continued disagreement with the PSR with counsel at the sentencing hearing. Thomas testified that:

> I had leaned to the side [to counsel] and said "How they going to give me leadership over Damien Wilson and they got it in black and white saying he was serving me a large quantity of heroin?" That's when he told it to Judge Kirk [sic] Engelhardt, and that's when Engelhardt told him to appeal it.

Realtime Un-edited Evid. Hearing Tr. at 9. At the evidentiary hearing, counsel for the government questioned Thomas further, suggesting that he was upset that his objections to the PSR had backfired and resulted in four points for leadership instead of two, and Thomas testified:

> I don't know why [counsel for the government] keep saying upset. I'm just appealing my case. I just let them know certain things. I let them know, like, how I'm going to be a leader over someone that y'all have in black and white in the factual basis saying he was serving me large quantities of heroin. I just said, you know, how I appreciate if you appeal it.

---

[1] Doskey also testified that about 85 percent of his law practice involves state criminal cases and that in state court, it is not common to file an appeal from a plea agreement because the sentences are typically agreed upon in the plea agreement. Realtime Un-edited Evid. Hearing Tr. at 39. However, he rejected the suggestion that this might be why he did not file a notice of appeal for Thomas.

6

Id. at 14. Counsel for the government attempted to explain to Thomas that his sentencing guidelines were calculated based on his career offender status and not a result of his leadership points or the drug quantity, but Thomas insisted: "[W]hatever we appeal, it was about all of [the objections to the PSR]." Id. at 16-17.

The Court finds when the PSR was revised to include four leadership points and Judge Engelhardt overruled his objections and issued a sentence, Thomas was passionately dissatisfied with the result. And, although he may not have known the appropriate terminology and although he may not have understood that the leadership points and drug quantities had not made a difference in his sentencing, Thomas felt that the Judge had abused his discretion and that his case should be appealed. Doskey agreed that Thomas "certainly didn't feel that was right." Id. at 45. Thus, the Court is convinced that Thomas attempted to convey his instruction that Doskey file an appeal during the sentencing hearing.

Additionally, the Court finds it significant that although Doskey denies that Thomas requested an appeal at the sentencing hearing, the transcript of the sentencing hearing indicates that an appeal was, at the least, floated as a possibility at that time. See id. at 31. Doskey stated the following on the record at the sentencing hearing:

> To the extent that it's necessary, I think that all objections have already been lodged. It would be necessary, especially in light of the waivers that might have been contained in the plea and the deferential nature of any review by the Fifth Circuit, we'll still go ahead and, again, offer that objection to the overruling of our objections to the PSI and to the Court's decision not to afford the downward departure. Having said that, I'm grateful for where you landed within the guidelines on that.

Sentencing Hearing Tr., Rec. Doc. 76, at 23). Not only does this indicate that an appeal was being contemplated,[2] but it also supports the conclusion that Thomas believed an appeal was going to be made.

Further, Doskey testified that Thomas had been very involved in all the issues of his case. He agreed that "clients like that often go on to appeal even if it's not [likely to be successful]." Evid. Hearing Tr. at 35. This further supports the Court's conclusion that Thomas requested Doskey file an appeal.

The Court takes note of Thomas's testimony at the evidentiary hearing that Judge Engelhardt "told [Doskey] to appeal it" and the declaration under penalty of perjury that Thomas included with his Motion to Vacate, which asserts that "the judge told counsel at sentencing to file an appeal." (Rec. Doc. 71-1, at 10). Doskey testified that Judge Engelhardt did not instruct him to file an appeal. Evid. Hearing Tr. at 31. Upon the undersigned's review of the sentencing hearing transcript, the closest Judge Engelhardt came to instructing Doskey to file an appeal was when he explained to Thomas that his appeal rights were limited by the Plea Agreement he had entered into and further explained that "[t]hose waivers generally are enforceable, but if you believe the waiver in your case is not, you may present that theory to the Court of Appeal." Sentencing Hearing Tr., Rec. Doc. 76, at 21. To the extent the government argues that Thomas's declaration and testimony regarding the statements of Judge Engelhardt indicate he is not telling the truth, the Court rejects this argument, finding instead that Thomas sincerely believed that Judge Engelhardt instructed his counsel to file an appeal, although Judge Engelhardt did not do so.

Thomas's declaration under penalty of perjury also attests that "I told my counsel when he came to visit me in the county jail to file a notice of appeal no matter what . . . . " (Rec. Doc. 71-

---

[2] The Court recognizes that Doskey's explanation is that he would typically preserve objections on the record "no matter what the waivers in the plea agreement." Realtime Un-edited Evid. Hearing Tr. at 37-38.

1, at 10). At the hearing, he testified that he had an additional discussion with Doskey about his appeal when Doskey came to visit him in jail a few weeks after his sentencing. Thomas testified that:

> I was asking did he want to appeal. He, like, yeah, he want to appeal it, but he was really talking about some stuff was going on in the state where they were trying to get me to witness. . . . I was letting him know, you know, I need to appeal these quantities and stuff. He was like, all right, and that was my last time ever seeing him or hearing from him.

Realtime Un-edited Evid. Hearing Tr. at 10. Doskey could not recall whether or not he had visited Thomas after his sentencing, though he did recall that at some point there had been a discussion of the possibility that Thomas could offer up to the government a witness that could provide information regarding earlier violent crimes in exchange for leniency. Id. at 42-43. The Court does not determine whether Thomas told Doskey to file an appeal during a visit at the jail because the Court has already determined that Thomas did so at the sentencing hearing. There is certainly no evidence to indicate that Thomas withdrew his request for an appeal.

## Conclusion

For the foregoing reasons, the undersigned RECOMMENDS the Court find that Thomas has demonstrated by a preponderance of the evidence that he requested Doskey file an appeal and order Thomas be allowed to file an out of time appeal within fourteen days of the Court's adoption of this Report and Recommendation.

## **OBJECTIONS**

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 26th day of September, 2017.

_____
Janis van Meerveld
United States Magistrate Judge