UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO. 14-246

LIONEL THOMAS                               SECTION "B"

## ORDER AND REASONS

Considering defendant Lionel Thomas's Motion for Compassionate Release (Rec. Doc. 106) and the government's opposition (Rec. Doc. 108),

**IT IS ORDERED** that the motion (Rec. Doc. 106) is **DENIED**.

## LAW AND ANALYSIS

### A. Exhaustion of Administrative Remedies

A motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A) may be granted only if filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. . . ." 18 U.S.C. § 3582(c)(1)(A). If the defendant can show that he exhausted all administrative remedies, the court may reduce the defendant's term of imprisonment upon a finding that "(i) extraordinary and compelling reasons warrant such a reduction" and "(ii). . .such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

1

It is undisputed that defendant Lionel Thomas ("Thomas") has exhausted his administrative requirements before filing the instant motion. Rec. Doc. 106 at 2-3; Rec. Doc. 108 at 12. Without providing supporting documentation, Thomas maintains that he submitted an internal request for compassionate release in early September 2020 that was subsequently denied in October 2020. Rec. Doc. 106 at 2-3. The government confirmed with BOP that such a request was received and denied within that period. Rec. Doc. 108 at 9. Because Thomas has established administrative exhaustion, we may proceed to the merits of his motion.

**B. Extraordinary and Compelling Reasons**

The Sentencing Commission identified four "extraordinary and compelling reasons" that may warrant a sentence reduction: (1) medical conditions, (2) age, (3) family circumstances, and (4) "other reasons." U.S.S.G. § 1B1.13 cmt. n.1(A)-(D)(2018). When the defendant seeks compassionate release on the basis of his underlying medical conditions, "extraordinary and compelling" reasons exist when the defendant, who does not pose a danger to the community, is suffering from a terminal illness[1], a serious physical or medical condition, serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of age that substantially diminishes the

---

[1] The Sentencing Commission included the following examples of a "terminal illness": metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia. *See* U.S.S.G. 1B1.13.

2

defendant's ability to provide self-care. *United States v. Henderson*, No. 11-271, 2020 WL 2850150, at *2 (E.D.La. June 2, 2020)(Milazzo, J.)(citing U.S.S.G. § 1B1.13). "The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns." *U.S. v. Thompson*, 984 F.3d 431, 434-35 (5th Cir. 2021).

The defendant bears the burden in demonstrating "extraordinary or compelling reasons". *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). Courts often deny a defendant's request for failure to demonstrate an extraordinary or compelling justification for compassionate release. *See Henderson*, 2020 WL 2850150 at *3 ("Defendant does not point to, nor do the medical records provided by the Government reveal, any medical condition that might warrant an extraordinary and compelling reason to grant his release."); *United States v. Wells*, No.: 17-104, 2021 WL 199386, at *3 (E.D.La. Jan. 19, 2021)(Barbier, J.)("Defendant has merely alleged that he suffers from kidney disease without attaching any supporting evidence of said disease, nor identifying what particular ailment Defendant suffers from."); *United States v. Sonnier*, No. 14-168, 2020 WL 4601638, at *3 (E.D.La. Aug. 11, 2020)(Africk, J.)(denying motion for compassionate release because defendant failed to demonstrate a serious physical or medical condition).

In *Raymer*, the defendant's medical history that revealed a lack of any serious physical or medical condition undermined his motion for compassionate release. *United States v. Raymer*, No. 4:17-CR-153, 2020 WL 3451855, at *3 (E.D.Tex. June 23, 2020). The court noted that the health conditions complained of by defendant, including asthma, bronchitis, borderline obesity, and fatty liver disease, were either managed by prescribed medication or did not amount to a serious medical condition. *Id.*

This Court has also consistently found that obesity is not an extraordinary or compelling reason for release. *See United States v. Gheith*, No. 14-69, 2020 WL 5850162, at *4 (E.D.La. Oct. 1, 2020)(Africk, J.)("Gheith's undocumented obesity, assuming it is a condition he suffers, does not rise to the level of extraordinary and compelling."); *United States v. Sentimore*, No: 04-382, 2020 WL 7630778, at *2 (E.D.La. Dec. 22, 2020)(Lemmon, J.); *United States v. Brumfield*, No. 13-94, 2020 WL 4747710, at *5 (E.D.La. Aug. 17, 2020)(Africk, J.); *United States v. Glover*, No. 11-290, 2020 WL 5712397, at *3 (E.D.La. Sept. 24, 2020)(Vance, J.)("Obesity – even in combination with other medical conditions that increase the risk of serious illness – has been held insufficient grounds for compassionate release even with the threat of the pandemic.").

Thomas moves for a sentence reduction on the basis that his various medical conditions, including bronchitis, pulmonary disease, intense respiratory condition, and obesity, render him at

4

risk of contracting COVID-19. Rec. Doc. 106 at 1-2. Thomas asserts that the health conditions in toto place him at a higher risk of contracting and potentially dying of the virus. *Id.* at 4.

However, Thomas's assertions are not supported by his prison medical records. The medical records generally indicate that Thomas never reported any serious health issues to the facility's medical personnel, including conditions cited in his motion. Notably, Thomas omits to mention that he was exposed to a COVID-positive individual and later tested positive himself in August 2020, prior to the filing of the instant motion. Consequently, Thomas was placed into quarantine, during which medical personnel regularly checked Thomas's temperature and monitored his symptoms. Throughout his ten-day quarantine, Thomas was reportedly symptom-free of serious consequences since his initial COVID-positive diagnosis and was released from isolation upon his complete recovery. Rec. Doc. 108-2 at 1-5.

In cases where the movant already contracted COVID while in custody, courts have generally denied compassionate release because the defendant's recovery demonstrates the prison's ability to provide adequate medical care. *United States v. Batiste*, No. 06-145, 2021 WL 878513, at *2 (E.D.La. Mar. 9, 2021)(Lemmon, J.); *Raymer*, 2020 WL 3451855 at *3; *Gheith*, 2020 WL 5850162 at *5; *United States v. Gallegos*, No. 4:17-CR-568, 2020 WL 3403032, at *3 (S.D.Tex. June 19, 2020)("Having already contracted and fully

5

recovered from COVID-19, the Court cannot say that Defendant's asthma 'substantially diminishes his ability. . .to provide self-care within the environment of a correctional facility."); *but cf. United States v. Arreola-Bretado*, 445 F.Supp.3d 1154, 1158 (S.D.Cal. 2020)(granting compassionate release to defendant whose COVID positive diagnosis exacerbated her multiple underlying medical conditions and put her at a "heightened risk of grave COVID-19 complications").

Thomas fails to demonstrate that he suffers a serious physical or medical condition or series of same that diminish his ability to provide self-care. Thomas's medical records indicate that he does not suffer any significant ailments and shows access to reasonably adequate medical care. Additionally, Thomas's relatively mild case and full recovery from COVID negates a conclusion that continued custody would place his health at a heightened risk.

Furthermore, general concerns regarding COVID is insufficient to justify compassionate release. *See U.S. v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020)("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); *Sonnier*, 2020 WL 4601638 at *4; *Henderson*, 2020 WL 2850150 at *3. Thomas raises concerns about BOP's ability to protect inmates from the virus and claims that the vaccine will not be available to them

6

for another 6-8 months. Rec. Doc. 106 at 3-5. However, as of the date of this order, BOP reports that 134 staff members and 651 inmates at Thomas's facility have been vaccinated.[2] Therefore, considering the aforementioned mitigating circumstances, we find that there are no extraordinary or compelling reasons that justify compassionate release at this time.

### C. Safety to Others and the Community

Even if we were to find Thomas's circumstances to be extraordinary or compelling, Thomas fails to demonstrate that his early release would not pose a threat to safety to others and the community. The defendant seeking compassionate release also bears the burden to "demonstrate that he is 'not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g).'" *United States v. Reed*, 464 F.Supp.3d 854, 860 (E.D.La. 2020)(Fallon, J.). "Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature of seriousness of the danger to a person or the community at large posed by the defendant's release." *Id.*

Although a defendant may not have been convicted of a violent crime, "that does not make his offense any less serious or dangerous to the community." *United States v. Bailey*, No: 17-244,

---

[2] *See* https://www.bop.gov/coronavirus/index.jsp

2020 WL 6701533, at *3 (E.D.La. Nov. 13, 2020)(citing *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985)("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'")).

In *Guyot*, this Court considered the defendant's extensive criminal history, which indicated that he was a "prolific drug dealer" and had a tendency towards recidivism, committing similar offenses while on supervised release. *United States v. Guyot*, No. 03-355, 2021 WL 230251, at *3 (E.D.La. Jan. 22, 2021)(Fallon, J.). Finding that the factors weighed against early release, this Court denied compassionate release, in part, because "Mr. Guyot's pattern of dangerous conduct related to drug trafficking exposes the community to a serious risk." *Id.* at *4; *see United States v. Lacayo*, No. 13-77, 2020 WL 7183367, at *4 (E.D.La. Dec. 7, 2020)(Fallon, J.)(same); *see also Wells*, 2021 WL 199386 at *3 (finding that defendant's "long and troublesome criminal history, including multiple drug convictions", and previous probation violations preclude a granting of compassionate release).

Likewise, in *Bailey*, the defendant was involved in a "substantial interstate heroin distribution conspiracy" that reached Arizona, Chicago, and New Orleans. *Bailey*, 2020 WL 6701533 at *3. "Given the interstate heroin trafficking network, the volume of heroin that Defendant was distributing, and the relatively small amount of heroin that could be lethal to a user, it is apparent to

8

the Court that Defendant could pose a serious danger to many communities if released." *Id.*

Thomas's criminal background reflects a distinct inability to avoid criminal conduct both while in custody and on release. He was convicted for committing federal and state drug offenses, and on multiple occasions while on release for those offenses, Thomas was either stopped or arrested by law enforcement, who seized at least $61,668 in connection to the drug trafficking operation. *See generally* Rec. Doc. 59. Thomas also admitted to orchestrating further trafficking operations by use of Orleans Parish Prison's phone system. *Id.* During one of those phone calls, Thomas admitted that he had another $20,000 that the police missed. *Id.* Thomas also admitted to selling heroin directly to a confidential source in a transaction monitored by law enforcement. Rec. Doc. 108 at 19.

Although he was not convicted of a violent crime, Thomas's criminal history reflects a pattern of dangerous behavior that belittles is request for early release. His substantial involvement in drug trafficking and directing others to continue his trafficking operations while he was in prison presents a substantial threat to the safety of the community if he is released. Moreover, if we were to grant Thomas's motion, he would have only served 6½ years of a 22-year sentence, which would

significantly undercut the serious nature of his offense, the deterrent value of his sentence, and public protection.

New Orleans, Louisiana this 30th day of April, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE